**Nos. 23-549, 23-550, 23-558, 23-559, 23-561, 24-2188 & 24-2189**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

PAVEL BABICHENKO,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the District of Idaho, Boise
No. 18-CR-258-BLW
Hon. B. Lynn Winmill

## APPELLANT PAVEL BABICHENKO'S SUPPLEMENTAL
## INDIVIDUAL OPENING BRIEF

Amy B. Krauss
Attorney
P.O. Box 65126
Tucson, AZ 85718
(520) 400-6170
abkrauss@comcast.net

*Attorney for Defendant-Appellant*
*Pavel Babichenko*

Additional counsel listed on next page

Maya P. Waldron
Waldron Legal, PLLC
P.O. Box 1316
Boise, ID 83701
(208) 244-0735
maya@waldronlegal.com

*Attorney for Defendant-Appellant*
*Pavel Babichenko*

## Table of Contents

Table of Authorities ................................................................... iii

INTRODUCTION ........................................................................1

JURISDICTIONAL STATEMENT .............................................2

BAIL STATUS ............................................................................2

ISSUE PRESENTED ...................................................................2

STATEMENT OF THE CASE .....................................................3

    A.    The Trial Proceedings ................................................3

    B.    Forfeiture Proceedings in the District Court ...........6

SUMMARY OF THE ARGUMENT ...........................................11

ARGUMENT .............................................................................13

The Third Amended Preliminary Order of Forfeiture Must Be
Vacated Because the Government Failed to Prove the Brazil
Properties Were "Properties of" Paul Babichenko and Thus "Subject
to Forfeiture." ..........................................................................13

    A.    Standard of Review ..................................................13

    B.    Argument ..................................................................13

        1.    *Rule 32.2 Clearly Places the Burden on the
            Government to Prove, by a Preponderance of the
            Evidence, the Property it Seeks to Forfeit Is Subject to
            Criminal Forfeiture.* .....................................14

        2.    *21 U.S.C. § 853(p) Provides for Forfeiture of
            Substitute Property Only When the Government
            Proves the Defendant Has a Cognizable Interest in
            the Property.* ..................................................18

a. Both Subsections of § 853(p) Must Be Satisfied Before the District Court May Grant a Preliminary Order of Forfeiture for Substitute Assets. ............ 19

b. The District Court's Conclusion that "The Government Does Not Need to Show that Either Paul or Tim Have an Ownership Interest in the Subject Properties Because Ownership Issues Are Reserved for the Ancillary Proceeding" is Contrary to § 853(n). ........................................................ 22

3. *Whether a Defendant Has Interest in Substitute Assets Must Be Determined in the Primary Criminal Proceeding; Otherwise, No One Can Challenge an Illegal Preliminary Order of Forfeiture.* ....................... 27

4. *The District Court's Preliminary Order of Forfeiture Must Be Vacated Because the Government Failed to Produce Any Evidence that Mr. Babichenko Had an Interest in the Brazil Properties.* ................................. 29

CONCLUSION ............................................................................... 30

Statement of Related Cases ......................................................... 31

Certificate of Compliance for Briefs ........................................... 32

Addendum

    Fed. R. Crim. P. 32.2 ............................................................ A-1

    21 U.S.C. § 853 .................................................................... A-8

## Table of Authorities

### Cases

*Honeycutt v. United States*, 581 U.S. 443 (2017) ....................................19

*United States v. 101 Houseco, LLC*, 22 F.4th 843 (9th Cir. 2022) ................................................................................ 11, 13, 22, 24

*United States v. Awad*, 598 F.3d 76 (2d Cir. 2010) ...............................21

*United States v. Christensen*, 828 F.3d 763 (9th Cir. 2015) ..................17

*United States v. Daugerdas*, 892 F.3d 545 (2d Cir. 2018)......................21

*United States v. DeFries*, 129 F.3d 1293 (D.C. Cir. 1997) .....................17

*United States v. Erpenbeck*, 682 F.3d 472 (6th Cir. 2012)....24, 25, 26, 27

*United States v. Fruchter*, 411 F.3d 377 (2d Cir. 2005) .........................17

*United States v. Garcia-Guizar*, 160 F.3d 511 (9th Cir. 1998) ..............17

*United States v. Gilbert*, 244 F.3d 888 (11th Cir. 2001) ........................24

*United States v. Gordon*, 710 F.3d 1124 (10th Cir. 2012).................26, 27

*United States v. Lester*, 85 F.3d 1409 (9th Cir. 2012)......................20, 21

*United States v. Lo*, 839 F.3d 777 (9th Cir. 2016)...................................13

*United States v. Myers*, 21 F.3d 826 (8th Cir. 1994) ..............................15

*United States v. Najjar*, 300 F.3d 466 (4th Cir. 2002) ...........................17

*United States v. Nava*, 404 F.3d 1119 (9th Cir. 2005) ...............20, 23, 24

*United States v. Nejad*, 933 F.3d 1162 (9th Cir. 2019) ...............18, 19, 20

*United States v. Pollard*, 850 F.3d 1038 (9th Cir. 2017)........................13

*United States v. Rutgard*, 116 F.3d 1270 (9th Cir. 1997) ......................15

*United States v. Shryock*, 342 F.3d 948 (9th Cir. 2003)........................17

*United States v. Surgent*, 2009 WL 2525137 (E.D.N.Y. 08/17/2009) .....21

*United States v. Valdez*, 911 F.3d 960 (9th Cir. 2018).....................18, 19

## Statutes

18 U.S.C. § 3231 .......................................................................................... 2

21 U.S.C. § 853 ............................................................. 12, 13, 20, 27, 28

21 U.S.C. § 853(a) ..................................................................................... 2

21 U.S.C. § 853(a)(1) ............................................................................ 17

21 U.S.C. § 853(n) ......................................................... 10, 15, 22, 24

21 U.S.C. § 853(n)(2) .......................................................................... 22

21 U.S.C. § 853(p) ........................................................ 11, 18, 19, 21

21 U.S.C. § 853(p)(1) ................................................... 11, 20, 22, 26

21 U.S.C. § 853(p)(1)(C) ................................................................... 19

21 U.S.C. § 853(p)(2) ........................................ 2, 4, 11, 12, 20, 24, 26, 29

28 U.S.C. § 1291 ........................................................................................ 2

## Other Authorities

David B. Smith, *Prosecution and Defense of Forfeiture Cases* (Sept. 2023 Supplement) ................................................................................ 14

## Rules

Fed. R. App. P. 4(b)(1)(A) ...................................................................... 2

Fed. R. Crim. P. 32.2 ........................................ 2, 12, 13, 20, 27, 28, 29

Fed. R. Crim. P. 32.2(b)(1)(A) .................................................... 11, 14

Fed. R. Crim. P. 32.2(b)(4)(A) ............................................................ 28

Fed. R. Crim. P. 32.2(e) ........................................................................ 11

Fed. R. Crim. P. 32.2(e)(1)(B) .................................................... 15, 18

Fed. R. Crim. P. 32.2(e)(2) .................................................................. 15

Fed. R. Crim. P. 32.2, Committee Notes (2000) ...................... 15, 16, 23

## INTRODUCTION

Appellant Pavel (Paul) Babichenko[1] is one of five co-defendants/co-appellants who filed a joint opening brief on August 14, 2024. There, he challenged his convictions and the district court's calculation of the money judgment entered against him based on forfeitable proceeds of the crimes of which he was convicted. (No. 23-550, Docket Entry 22.1.) In this individual brief, Mr. Babichenko challenges the district court's third amended preliminary order of forfeiture of substitute assets to satisfy that money judgment, namely residential apartment buildings located in Brazil (the "Brazil properties"). Paul's Supplemental Excerpts of Record 1-PER-3–18 (hereafter "PER" with appropriate volume and page citation). Below, Mr. Babichenko will show that in granting the order, the district court abandoned fundamental principles of criminal forfeiture law requiring the government to prove, by preponderance of the evidence, that the property is subject to forfeiture. To substitute

---

[1] "Pavel" is a given name whereas "Paul" is the Anglicized form of that name. Throughout the proceedings and in various documents, both are used. In this brief, first names will be used where necessary to avoid confusion with family members having the last name Babichenko (or, in the case of Gennady, Babitchenko, who is the only brother who spells his last name with a "t").

untainted property for tainted property, it must be "property of the defendant." Because the government did not make any showing that the Brazil properties were properties of Mr. Babichenko, the third amended preliminary order of forfeiture must be vacated.

## JURISDICTIONAL STATEMENT

The district court had original jurisdiction pursuant to 18 U.S.C. § 3231. *See* Appellant's Joint Excerpts of Record 5-ER-1158–91 (hereafter "ER" with appropriate volume and page citation). This Court has jurisdiction pursuant to 28 U.S.C. § 1291. Mr. Babichenko filed a timely amended notice of appeal from the court's third amended preliminary order on April 8, 2024. *See* Fed. R. App. P. 4(b)(1)(A); 1-PER-3; 2-PER-218.

## BAIL STATUS

Mr. Babichenko is out of custody pending appeal.

## ISSUE PRESENTED

Whether Rule 32.2, Fed. R. Crim. P., and 21 U.S.C. §§ 853(a) and (p)(2) require that, before granting a motion for preliminary order of forfeiture of substitute assets, the government must prove, by a

preponderance of the evidence, that the property is "property of the defendant" and thus subject to forfeiture?

**STATEMENT OF THE CASE[2]**

Paul Babichenko, along with members of his extended family, emigrated as children from the former Soviet Union to escape religious persecution. He is a U.S. citizen who became a successful entrepreneur, primarily in the business of selling cell phones and accessories through two online platforms, Amazon.com and eBay.com.

A.    The Trial Proceedings

On May 15, 2019, the government obtained a superseding indictment against Mr. Babichenko and nine co-defendants, most of whom were related to him by blood or marriage. The 51 separate charges alleged various counts of wire fraud, mail fraud, trafficking in counterfeit goods, and money laundering – all based on the theory that

---

[2] The facts underlying Mr. Babichenko's convictions are fully recited in the joint opening brief. (Docket Entry 22 at pp. 5-23.) Therefore, only a summary of the facts, and those relevant to the determination of the issue presented herein, are discussed below.

the defendants sold "counterfeit" cell phones and accessories.[3] 5-ER-1158–91.

The new indictment also included forfeiture allegations. In connection with Counts 20 through 34, which alleged Conspiracy/Trafficking in Counterfeit Goods, the government sought forfeiture of various types of assets ostensibly belonging to the defendants. Included in the 10-page list were seven real properties described as "residential apartment buildings, five of which are related to companies associated with the defendants and located in [Paratibe] Brazil," and "two in Mangabeira [Brazil]." 5-ER-1182–83. The government also sought forfeiture of "business property and proceeds thereof," related to Babichenko Construction (aka Babichenko Construcoes) and Midstar Construcoes. 5-ER-1188–89. Unlike most of the other assets described in the indictment, none of the Brazil properties or businesses were identified as belonging to a specific defendant or defendants. 5-ER-1182–83, 1188–89. Mirroring the

---

[3] In the joint opening bsrief, Appellants argued that the district court conflated the meaning of the term "counterfeit" by failing to distinguish phones and accessories that were genuine Apple and Samsung devices, but which had been refurbished with aftermarket parts.

statute, the indictment also included a provision for "forfeiture of substitute assets, 'or any other property *of the defendant*' up to the value of the defendants' assets subject to forfeiture." 5-ER-1190. (emphasis added); 21 U.S.C. § 853(p)(2).

A ten-week jury trial with nine defendants[4] commenced on June 21, 2021, and ended without a single conviction.[5] As to Paul, the jury deadlocked on all charges. 4-ER-920–21; 4-ER-883–85. The district court dismissed with prejudice all charges against Gennady Babitchenko, mid-trial. 4-ER-914–15.

Paul and six co-defendants proceeded to a second trial, which ran from May 18, 2022, to August 1, 2022. 3-ER-726, 3-ER-708–09. The district court granted Paul's motion for acquittal as to counts 21 and 23. 3-ER-674–84. The jury acquitted Kristina Babichenko and Anna

---

[4] Artur Pupko pled guilty pursuant to a plea agreement and agreed to testify for the government at trial.

[5] The jury could not reach a verdict on any charges against Mikhail ("Michael") Iyerusalimets, Anna Iyerusalimets, or Kristina Babichenko. Natalya Babichenko was fully acquitted. Three defendants, Piotr ("Peter") Babichenko, Timofey ("Tim") Babichenko, and David Bibikov were acquitted of some charges and with respect to others the jury could not reach a verdict. 4-ER-854–71, 880–82, 914–19. The government dismissed the money laundering charges shortly after trial. 4-ER-916–19.

Iyerusalimets of all counts, 3-ER-690–93, 697–99, and found Paul, Tim, Peter, David Bibikov, and Michael Iyerusalimets, guilty of all remaining counts. 3-ER-685–89, 694–96, 700–03, 704–05, 706–07.

### B. Forfeiture Proceedings in the District Court

After his 2021 acquittal, Gennady moved the district court to release the pretrial restraint of the properties in Brazil.[6] 2-PER-164. Gennady asserted that the properties are wholly owned by Babichenko Construction, which is a partnership between himself (99%) and Igor Babichenko (1%), and that no convicted defendant had an interest in them. 2-PER-170; 3-PER-232. In response, the government promised it would present evidence "that illegal proceeds from the remaining defendants' trafficking in counterfeit goods were used to purchase and build the foreign real property listed in the superseding indictment." 2-PER-160–61. The district court denied the motion based on the language in the superseding indictment alleging that Babichenko

---

[6] In 2020, at the Justice Department's request pursuant to a Mutual Legal Assistance Treaty with Brazil, these properties were restrained to prevent their sale or devaluation pending a final disposition of the forfeiture allegations.

Construction and property belonging to it were subject to forfeiture upon conviction of the remaining defendants. 2-PER-155–56.

After the second trial concluded, the parties waived a jury determination of the forfeiture allegation in the superseding indictment, leaving it to the district court to determine the forfeiture issues. 23-ER-6393–400. In October of 2022 the government filed a motion for a preliminary order of forfeiture, which included the seven buildings in Brazil as substitute property. 2-PER-119, 139.

Forfeiture hearings were conducted in January, 2023. 2-PER-114, 115, 116, 117, 118. Contrary to what it represented in its opposition to Gennady's motion, at the hearings the government did not introduce any evidence regarding the Brazil properties. In fact, the government remained silent when counsel for Mr. Babichenko advised the court of his communications with the government and its posture regarding the Brazil properties – that the government was not at that time seeking forfeiture of those properties. 2-PER-109–10.

For the next several months the parties litigated various aspects of the forfeiture issues, but the Brazil properties were not among them. The district court ultimately granted four separate forfeiture orders,

7

none dealing with the properties in Brazil or Babichenko Construction.[7] 3-ER-578–620, 2-PER-48-65, 1-ER-43–93, 2-PER-41-47. After the fourth order issued, on August 31, 2023, Gennady file his second motion for return of the Brazil properties. 2-PER-37.

One month later, the government filed a motion for a preliminary order of forfeiture specifically of the Brazil properties. 2-PER-25. As grounds supporting the motion, the government listed numerous wire transfers between August of 2010 and April 13, 2018, from Mr. Babichenko's bank accounts (with his wife, Tim, or through Midstar Distributor LLC), to various bank accounts in Brazil. 2-PER-27–29 (referencing Trial 1 Gov. Ex. 1244-3.) Most funds were sent to accounts associated with Midstar Construcoes (23 transfers), although receiving

---

[7] The initial preliminary order of forfeiture on March 15, 2023, imposed money judgments on Peter, Paul, and Tim Babichenko and Mikhail Iyerusalimets, and ordered forfeiture of various items that constituted contraband. 3-ER-578. An amended preliminary order of forfeiture on May 2, 2023, pertaining to those same defendants, added properties that were either purchased with criminal proceeds or were used to facilitate the crimes. 1-ER-43–93. On August 22, 2023, the district court issued a second amended preliminary order of forfeiture to clarify its grounds for ordering the forfeiture of property belonging to Tim Babichenko. 2-PER-41. The district court issued a separate general order of preliminary forfeiture as to David Bibikov, on March 22, 2023. 2-PER-48.

accounts also included Western Union (5 transfers), Esther Lydia Dyer (2 transfers), and 1 transfer each to Custom Homes Construcoes, an individual named Arthur Luna, and a law firm. Id.

The government pointed to an investigative report prepared by a Federal Police Agent in Brazil, which showed that Midstar Constructoes is a partnership between Paul and Igor Babichenko. This is the only company in Brazil that is associated with Paul. 2-PER-26–27; 3-PER-230, 236. In the same report, Gennady Babitchenko is listed as a partner in three companies: Babichenko Construcoes, Custom Homes Construoes, and New Horizon Construcoes. 3-PER-232–34, 238.

*Relying solely on the transfers and investigative report*, the government made the unsupportable assertion that Paul used Midstar Construction to "buil[d] a number of residential apartment buildings alongside his brothers, Gennady Babitchenko, Piotr Babichenko, and Tim Babichenko." 2-PER-27. The government did not present any evidence connecting the money Paul sent to Brazil to the apartments, or to Babinchenko Construcoes, the uncontested owner of the properties. At most, the investigative report showed that Igor Babichenko was a partner in both Midstar Construcoes and Babichenko Construcoes, but

9

that does not establish, by any standard of proof, that Paul or Midstar participated in the building or financing of the apartments. Indeed, the government didn't make that argument to the district court. Neither did the government present evidence of a financial investigation tracing the funds from the receiving accounts. The government may have proved that Paul sent money to various accounts in Brazil, but without more, there was no evidence presented to the district court demonstrating that the substitute assets – the Brazil properties – were "properties of" Paul Babichenko.

Nevertheless, the district court granted a preliminary order of forfeiture (captioned "Third Amended Findings of Fact, Conclusions of Law, and Preliminary Order of Forfeiture") setting out its conclusion that the government did not need to establish ownership of the Brazil properties by Mr. Babichenko or any one of the convicted defendants. Instead, the court deferred "all ownership issues" to the ancillary proceeding. 1-PER-13. The district court contemporaneously denied Gennady's second motion to release the restraint on his properties, finding that his interest also will be determined in the ancillary proceeding. 2-PER-23. That proceeding is exclusively reserved for third

10

parties, who are not permitted to "claim that the property was not forfeitable in the first place." *United States v. 101 Houseco, LLC*, 22 F.4th 843, 849 (9th Cir. 2022); 21 U.S.C. § 853(n).

The district court's interpretation of federal forfeiture law left no one with the right or ability to hold the government to its burden of proof that only property "of the defendant" is forfeitable as a substitute asset. This appeal seeks to remedy that grievous error.

## SUMMARY OF THE ARGUMENT

A fundamental tenet of criminal forfeiture law is that the government must prove, by preponderance of the evidence, that the property it seeks to forfeit is subject to forfeiture in the first instance. *See* Rule 32.2(b)(1)(A), (e); 21 U.S.C. § 853(p). Substitute assets are forfeitable if they are "property of the defendant." 21 U.S.C. § 853(p)(2).

To substitute the defendant's untainted assets for his tainted assets, 21 U.S.C. § 853(p) sets out a two-part process. First, the government must establish that the defendant caused tainted assets to become unavailable. 21 U.S.C. § 853(p)(1). For Mr. Babichenko, that condition was ostensibly satisfied by evidence that, during the time period alleged in the indictment, he sent money to various bank

11

accounts in Brazil. But the government did not seek direct forfeiture of those funds. Instead, the government sought to forfeit real property in Brazil as substitute assets.

The second part of the process, outlined in § 853(p)(2), plainly requires that only "property of the defendant" is forfeitable as substitute assets. Mr. Babichenko wired money to accounts in Brazil, but there was no additional evidence tracing the funds from those accounts to any of the apartment buildings. The government did not establish, by any burden of proof, that Mr. Babichenko, individually or through his businesses, purchased, built, or had any interest in the Brazil properties listed in the superseding indictment.

The district court's conclusion that the government had no burden to carry in the primary criminal proceeding, and instead deferring "all ownership issues" to the ancillary proceeding, from which Mr. Babichenko is precluded from participating, nullified settled principles embodied in Rule 32.2 and § 853. This Court must, therefore, vacate the third amended preliminary order of forfeiture.

12

# ARGUMENT

**The Third Amended Preliminary Order of Forfeiture Must Be Vacated Because the Government Failed to Prove the Brazil Properties Were "Properties of" Paul Babichenko and Thus "Subject to Forfeiture."**

### A. Standard of Review

This Court reviews a district court's interpretation of federal forfeiture law de novo, *United States v. Pollard*, 850 F.3d 1038, 1041 (9th Cir. 2017), and factual findings for clear error, *United States v. Lo*, 839 F.3d 777, 784 (9th Cir. 2016).

### B. Argument

The government's evidence established that Mr. Babichenko sent money to various bank accounts in Brazil during the period alleged in the indictment. The government could have seized the funds attendant to its criminal forfeiture allegation, as it did with the Brazil properties themselves, or the government could have filed an *in rem* civil forfeiture action against the proceeds in those accounts. It did neither. Instead, the government elected to proceed against the properties as substitute assets to satisfy its money judgments against Mr. Babichenko. That choice required the government to comply with the provisions of Rule 32.2 and 21 U.S.C. § 853. *See 101 Houseco, LLC*, 22 F.4th at 845

13

(holding that Rule 32.2 and § 853 provide the procedural framework for all criminal forfeitures). *See* Addendum A-1–7, A-8–16.

> 1. *Rule 32.2 Clearly Places the Burden on the Government to Prove, by a Preponderance of the Evidence, the Property it Seeks to Forfeit Is Subject to Criminal Forfeiture.*

Pursuant to Rule 32.2(b)(1)(A), in the forfeiture phase of the trial proceedings, the district court is authorized to enter a preliminary order of forfeiture only after determining "what property is subject to forfeiture under the applicable statute." The rule does not distinguish between or exempt any specific type of property from this overarching requirement; rather, it expressly applies to any property the government seeks to forfeit from the defendant, including substitute property. *See* David B. Smith, *Prosecution and Defense of Forfeiture Cases*, ¶ 13.02(4)(b) (Sept. 2023 Supplement) (stating that the government must show that any alleged substitute property is 'property of the defendant' before an order forfeiting that property may be entered).

Indeed, Rule 32.2(e), which specifically addresses forfeiture of substitute property, affirms this requirement. The district court is authorized to enter a preliminary forfeiture order or amend an existing

14

order to include substitute property only "[i]f the government shows that the property is subject to forfeiture" "under an applicable statute." Rule 32.2(e)(1)(B), (2).

The principle that the government must make a prima facia showing that property is subject to forfeiture before the district court may grant a preliminary order of forfeiture is also reflected in the Committee Notes to Rule 32.2 and decisions of this Court. The Committee Notes explain that "the government must establish the forfeitability of the property by a preponderance of the evidence." Rule 32.2, Committee Notes (2000). The Note cites to *United States v. Myers*, 21 F.3d 826, 820 (8th Cir. 1994), which this Court cited in turn, with approval, in *United States v. Rutgard*, 116 F.3d 1270, 1293 (9th Cir. 1997).

This prerequisite is related to the fact that criminal forfeiture is an *in personam* action in which only the defendant's interest in the property may be forfeited. Rule 32.2, Committee Notes (2000) (citation omitted). And, relatedly, the reason Congress enacted § 853(n) in 1984, to provide for an ancillary proceeding was to ensure that third party interests in criminally forfeited property have an opportunity to contest

15

forfeiture of their property. *Id.* The Note goes on to explain the reason

for separate proceedings:

> Under this scheme, the court orders the forfeiture of the defendant's interest in the property— whatever that interest may be—in the criminal case. At that point, the court conducts a separate proceeding in which all potential third party claimants are given an opportunity to challenge the forfeiture by asserting a superior interest in the property. This proceeding does not involve *relitigation of the forfeitability of the property*; its only purpose is to determine whether any third party has a legal interest in the forfeited property.

*Id.* (emphasis added). This passage makes clear that the ancillary

proceeding is the forum for determining the *extent of* the defendant's

forfeitable interest in the property, but only after the district court has

heard and decided (i.e. the parties litigated) that the defendant *has a*

*forfeitable interest* in the property in the first place. This antecedent

determination is a burden of production that must be met by the

government in the criminal proceeding. Construing the rule any other

way would lead to the absurd result (as it did in this case), that no one

has standing to challenge the erroneous granting of a preliminary order

of forfeiture of substitute assets.

16

Like any other sentencing factor, the burden of proof is by a preponderance of the evidence. *United States v. Christensen*, 828 F.3d 763, 822 (9th Cir. 2015). In *Christensen*, the Court plainly held that because criminal forfeiture is an aspect of the sentence, a district court or jury must find the facts warranting forfeiture by a preponderance of the evidence. *Id.* The Court supported its conclusion by citing to decisions of the Second, Fourth, and District of Columbia Circuits,[8] in addition to *United States v. Shryock*, 342 F.3d 948 (9th Cir. 2003), which concluded that "statutorily-prescribed forfeiture is constitutional when supported by the preponderance of the evidence." *Id.* (quoting *Shryock*, 342 F.3d at 822); *see also United States v. Garcia-Guizar*, 160 F.3d 511, 517 (9th Cir. 1998) (under § 853(a)(1), the government must prove by a preponderance of the evidence, and not beyond a reasonable doubt, that property should be criminally forfeited).

---

[8] Those cases were: *United States v. Fruchter*, 411 F.3d 377, 383 (2d Cir. 2005); *United States v. Najjar*, 300 F.3d 466, 485–86 (4th Cir. 2002); and *United States v. DeFries*, 129 F.3d 1293, 1312–13 (D.C. Cir. 1997). The *Christensen* Court also found support in Rule 32.2's Committee Notes, explaining that "the government must establish the forfeitability of the property by a preponderance of the evidence." *Id.*

17

Forfeiture of substitute assets is no different. When a defendant's own acts or omissions have caused his tainted property to become unavailable, the government may seek to substitute untainted property for tainted property. *United States v. Valdez*, 911 F.3d 960, 965–66 (9th Cir. 2018). Under Rule 32.2(e)(1)(B), the district court is authorized to enter a preliminary order forfeiting substitute property "that qualifies for forfeiture under an applicable statute." The "applicable statute" is 21 U.S.C. § 853(p).

> 2. *21 U.S.C. § 853(p) Provides for Forfeiture of Substitute Property Only When the Government Proves the Defendant Has a Cognizable Interest in the Property.*

Pursuant to § 853(p), a court may order forfeiture in the form of a personal money judgment against the defendant, and the government may attempt to satisfy the judgment with any substitute property it locates thereafter. *United States v. Nejad*, 933 F.3d 1162, 1165 (9th Cir. 2019).

Procedurally, once the government identifies untainted property that it believes may be used to satisfy a personal money judgment, it must return to the district court and establish that the requirements of § 853(p) have been met. *Id.* at 1165 (citation omitted). If the court

18

concludes that those requirements have been satisfied, the court may then amend the forfeiture order to include the newly identified substitute property. *Id.* (citation omitted). Only when these procedures are followed may the government satisfy a personal money judgment from *the defendant's* untainted assets. *Id.* at 1166 (emphasis added). As this Court explained, "that limitation stems from the Court's observation in *Honeycutt* that 'Congress provided just one way for the Government to recoup substitute property when the tainted property itself is unavailable—the procedures outlined in § 853(p).'" *Id.* (quoting *Honeycutt v. United States*, 581 U.S. 443, 452 (2017)).

> a. *Both Subsections of § 853(p) Must Be Satisfied Before the District Court May Grant a Preliminary Order of Forfeiture for Substitute Assets.*

Section 853(p) has two parts, each of which must be satisfied before the government can obtain a preliminary order of forfeiture for substitute assets. Addendum at A-16. The district court found that recouping substitute assets was appropriate because Mr. Babichenko sent money to Brazil, which is outside the jurisdiction of the court. 1-PER-7, 15. *See* § 853(p)(1)(C); *Valdez*, 911 F.3d at 965–66. That

19

conclusion satisfied subsection (p)(1), the first part of the statutory scheme for moving forward against substitute assets.

The second part of the statutory scheme, subsection (p)(2), requires that the defendant have a legally cognizable interest in the substitute property that was placed outside of the jurisdiction of the court:

> In any case described in any of subparagraphs (A) through (E) of paragraph (1), the court shall order the forfeiture of any *other property of the defendant*, up to the value of any property described in subparagraphs (A) through (E) of paragraph (1), as applicable.

21 U.S.C. § 853(p)(2) (emphasis added). This prerequisite makes sense because the purpose of forfeiting a substitute asset is to credit its value against the money owed to the government by the defendant. *Nejad*, 933 F.3d at 1165. And, consistent with Rule 32.2, forfeitures under § 853 are *in personam*, which "permits the forfeiture of the defendant's interest only, not the property of innocent parties." 1-PER-10 (citing *United States v. Nava*, 404 F.3d 1119, 1124 (9th Cir. 2005) (because § 853 acts *in personam*, it permits the forfeiture of the defendant's interests only, not the property of innocent parties); *see also United States v. Lester*, 85 F.3d 1409, 1415 (9th Cir. 2012) (holding that the

20

plain language of § 853(p) clearly provides that only the substitute

"*property of the defendant*" may be forfeited to the Government)

(emphasis in original). As one district court judge explained, "it would

be quite anomalous to make a sentencing determination without the

defendant's participation." *United States v. Surgent*, 2009 WL 2525137,

*24 (E.D.N.Y. 08/17/2009), abrogated on other grounds by *United States

v. Awad*, 598 F.3d 76, 79 (2d Cir. 2010). Accordingly, the *Surgent* court

expressly held that the "the government must show that any alleged

substitute property is property 'of the defendant' before an order

forfeiting that property may be entered." *Id.* at *22. This holding, as

well as the above-quoted language in *Lester*, was cited with approval by

the Second Circuit in *United States v. Daugerdas*, 892 F.3d 545, 553 (2d

Cir. 2018).

In this case, the district court abrogated its duty to determine, in

the primary criminal forfeiture proceeding, that the government met its

burden of proof demonstrating that Paul had an interest in the Brazil

properties before granting a preliminary order of forfeiture of those

properties.

21

> b. *The District Court's Conclusion that "The Government Does Not Need to Show that Either Paul or Tim Have an Ownership Interest in the Subject Properties Because Ownership Issues Are Reserved for the Ancillary Proceeding" is Contrary to § 853(n).*

The district court took an illogical leap when it concluded from its (p)(1) finding, that requiring the government to establish the Brazil properties are "propert[ies] of" Mr. Babichenko, would impose an unintended "additional requirement" or a "redundancy." 1-PER-10, 11. Section 853(n)(2) expressly permits "any person, *other than the defendant*" to assert a legal interest in property which has been ordered forfeited (emphasis added). Mr. Babichenko is barred from participating in the ancillary proceeding, and third parties are not permitted to assert that the property was not forfeitable in the first place. *101 Houseco, LLC*, 22 F.4th at 849; § 853(n).

The district court referred to the rule's Advisory Notes to support its view, but it is meaningful that the commentary uses the phrase "forfeitable interest," which mirrors the statute. 1-PER-10. Indeed, the Advisory Notes affirm that Congress intended a two-part "scheme" when it enacted § 853(n) in 1984:

22

> "[T]he court orders the forfeiture of the *defendant's interest in the property* – whatever that interest may be – in the criminal case. At that point, the court conducts a separate proceeding in which all potential third party claimants are given an opportunity to challenge the forfeiture by asserting a superior interest in the property. This proceeding does not involve *relitigation of the forfeitability of the property*; its only purpose is to determine whether any third party has a legal interest in the forfeited property."

Rule 32.2, Committee Notes (2000) (emphasis added).

The statute and rule are consistent. Both proceedings are necessary to ultimately determine if there is a forfeitable interest in property that is available to the government. The primary criminal proceeding addresses whether the defendant has an interest in the property, whereas the ancillary proceeding addresses whether any third-party has an interest in the property. The burden of proof in both is preponderance of the evidence. *Nava*, 404 F.3d at 1125.

In *Nava*, this Court explained the rationale behind placing the burden on the third-party petitioner to prove his interest is superior to the defendant's or that he was a bona fide purchaser for value, stating:

> Congress chose to place the burden of proof on the third-party during the ancillary proceeding, *since the government would necessarily have carried its burden of proving that the defendant's interest in*

23

> *the property was subject to forfeiture during the criminal trial.*

*Id.* (emphasis added) (quoting and citing *United States v. Gilbert*, 244 F.3d 888, 911 (11th Cir. 2001); *see also 101 Houseco, LLC*, 22 F.4th at 852 (section 853(n) provides the exclusive means by which a third party may lay claim to forfeited assets and does not allow "relitigation of the forfeitability of the property.") (citation omitted). The word "relitigation" assumes the matter was first litigated in the primary criminal proceeding.

The district's court's interpretation of § 853(p)(2), that "the government does not need to show that either Paul or Tim have an ownership interest in the subject properties because ownership issues are reserved for the ancillary proceeding" is contrary to the holdings of these cases. Further, it is not supported by the two out-of-Circuit cases it relied on. 1-PER-9–10. In *United States v. Erpenbeck*, 682 F.3d 472 (6th Cir. 2012), the court considered whether the government provided sufficient notice of criminal forfeiture proceedings to the trustee of the defendant's bankruptcy estate. The subject property was $250,000 that had been buried in a cooler at a golf club and recovered after the defendant began serving his 300-month sentence for bank fraud in

24

2003. The defendant was also ordered to forfeit nearly $34 million in fraud proceeds. *Erpenbeck*, 682 F.3d at 474. The trustee contacted the AUSA to express an interest in the cash, but the AUSA did not inform the trustee of the ongoing forfeiture proceedings. As a result, the trustee did not file a petition in the ancillary proceeding, and the district court entered a final order of forfeiture awarding the money to the government. The trustee moved to stay the final order, which the district court denied. *Id.* at 475.

On appeal, the trustee argued that ancillary proceeding was unnecessary. He reasoned that the cash was not "property of the defendant" because it became solely vested in the bankruptcy estate when the bankruptcy petition was filed in July of 2002, before the defendant's conviction. *Id.* at 480. The court disagreed, finding that this argument amounted to a claim that the trustee had a superior interest in the cash, which as a third-party, he had to make in an ancillary proceeding. The court said, "[t]he forfeiture statute makes it clear that an ancillary proceeding is the *sole* avenue for a third party to assert an interest in forfeitable property." *Id.* (emphasis in original). In so holding, the court assumed the cash was "property of the defendant,"

25

otherwise it would not be criminally forfeitable. *Id.* at 475. The Court vacated the final order of forfeiture. *Id.* at 481.

The district court also misplaced reliance on *United States v. Gordon,* 710 F.3d 1124 (10th Cir. 2012), by quoting a reference to a forfeiture treatise that was not necessary to the Court's holding. 1-PER-9. In *Gordon*, the defendant was convicted of wire fraud and ordered to pay nearly $44 million representing traceable proceeds. *Gordon*, 710 F.3d at 1165. The district court granted a preliminary order of forfeiture of the defendant's personal residence, in which $1,702,000 of equity was directly forfeitable as proceeds of the crime. However, because the home was titled to his wife, the defendant contended that it did not belong to him and thus was not forfeitable as a substitute asset. *Id.* at 1167. The Court disagreed, holding that the defendant's wife's interest in the home was properly addressed in the ancillary proceeding. *Id.* The Court also held the "government offered sufficient evidence to make the required showings under § 853(p)(1) and (p)(2)… ." *Id.* at 1168.

*Gordon* affirms that the government must produce evidence that substitute property belongs to the defendant. There, the evidence was

26

sufficient because the defendant had an equity interest in the home, regardless of how it was titled.

The holdings of both *Gordon* and *Erpenbeck* reaffirm what is clear in both Rule 32.2 and § 853: there must be proof that a defendant has an interest in property before it can be criminally forfeited. Aside from that, both stand for the unremarkable principle that third-party claims are reserved for the ancillary proceeding. Certainly, neither case supports the district court's decision to defer "all ownership decisions," including the defendant's, to the ancillary proceeding.

In this case, the government did not carry its burden of proving the Brazil properties were subject to forfeiture, because no evidence was introduced to show that the Brazil properties were "properties of" Mr. Babichenko.

> 3. *Whether a Defendant Has Interest in Substitute Assets Must Be Determined in the Primary Criminal Proceeding; Otherwise, No One Can Challenge an Illegal Preliminary Order of Forfeiture.*

Third party claims are not at issue here. In this case, the issue is the government's burden in the primary criminal proceeding to establish that the defendant has an interest in the substitute asset,

27

which is necessary for the property to be "forfeitable" in the first instance.

The district court quickly rejected this argument by characterizing it as having "the same effect as argument the defendants do not own the property or that someone else does." 1-PER-12. This conclusion impermissibly shifted the burden of proof to Mr. Babichenko, contrary to Rule 32.2 and § 853.

In addition, holding bifurcated proceedings makes sense. If in the primary criminal proceeding the government satisfies its burden of proving the defendant has a forfeitable interest in the substitute asset, then the preliminary order of forfeiture becomes final as to the defendant and the court can proceed to the ancillary proceeding. Rule 32.2(b)(4)(A). But if the government cannot establish that the substitute assets it seeks to forfeit are "property of the defendant," then no preliminary order of forfeiture will issue and there is no need for an ancillary hearing.

This outcome is consistent with the statutory framework outlined above and promotes efficiency and fairness. Third parties (like Gennady Babitchenko) should not be forced to litigate their interest in an asset

28

that is not forfeitable to begin with. It is nonsensical, even unfathomable, that Congress intended to create a system where no one could challenge an unlawful forfeiture—yet this is precisely the untenable outcome created by the district court in this case.

    4.    *The District Court's Preliminary Order of Forfeiture Must Be Vacated Because the Government Failed to Produce Any Evidence that Mr. Babichenko Had an Interest in the Brazil Properties.*

This Court should expressly hold that to obtain a preliminary order of forfeiture for substitute assets pursuant to Rule 32.2 and § 853(p)(2), the government must prove by a preponderance of the evidence that the substitute property is "property of the defendant," thereby making it subject to forfeiture. Because the government failed to produce any evidence whatsoever demonstrating that Mr. Babichenko had an interest in the Brazil properties that was subject to forfeiture, the district court's third amended preliminary order of forfeiture was improvidently granted.

29

## CONCLUSION

For all the foregoing reasons, Paul Babichenko respectfully requests that this Court vacate the district court's third amended preliminary order of forfeiture.

Date: September 20, 2024

*/s/ Amy B. Krauss*
*Amy B. Krauss*

*/s/ Maya P. Waldron*
*Maya P. Waldron*

*Attorneys for Defendant-Appellant*
*Pavel Babichenko*

## Statement of Related Cases

Pursuant to Ninth Circuit Rule 28-2(6)(c), undersigned counsel state that the following cases are related to this appeal:

*United States v. Timofey Babichenko*, No. 23-549, 24-2188

*United States v. Piotr Babichenko*, No. 23-559

*United States v. Mikhail Iyerusalimets*, No. 23-558

*United States v. David Bibikov*, No. 23-561

These cases were consolidated by Orders of this Court, and a joint opening brief was filed on August 14, 2024. *See* Ninth Circuit Docket number 23-550, docket entry 22.1.

Date: September 20, 2024
*/s/ Amy B. Krauss*
Amy B. Krauss

*/s/ Maya P. Waldron*
Maya P. Waldron

*Attorneys for Appellant*
*Pavel Babichenko*

31

## Certificate of Compliance for Briefs
### 9th Cir. Case Numbers 23-550 & 24-2189

I am an attorney representing Appellant in this matter.

**This brief contains 5,587 words,** excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with

Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief:

**[X] complies with the word limit of Cir. R. 32-1.**

[ ] is a cross-appeal brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an amicus brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a death penalty case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

    [ ] it is a joint brief submitted by separately represented parties;

    [ ] a party or parties are filing a single brief in response to multiple briefs; or

    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature:** */s/Amy B. Krauss*      **Date:** September 20, 2024

32

# ADDENDUM

Addendum

Table of Contents

Fed. R. Crim. P. 32.2 .......................................................................... A-1

21 U.S.C. § 853............................................................................... A-8

A-i

## Federal Rule of Criminal Procedure 32.2
## Criminal Forfeiture

(a) Notice to the Defendant. A court must not enter a judgment of forfeiture in a criminal proceeding unless the indictment or information contains notice to the defendant that the government will seek the forfeiture of property as part of any sentence in accordance with the applicable statute. The notice should not be designated as a count of the indictment or information. The indictment or information need not identify the property subject to forfeiture or specify the amount of any forfeiture money judgment that the government seeks.

(b) Entering a Preliminary Order of Forfeiture.

(1) *Forfeiture Phase of the Trial.*

(A) *Forfeiture Determinations.* As soon as practical after a verdict or finding of guilty, or after a plea of guilty or nolo contendere is accepted, on any count in an indictment or information regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute. If the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense. If the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay.

(B) *Evidence and Hearing.* The court's determination may be based on evidence already in the record, including any written plea agreement, and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable. If the forfeiture is contested, on either party's request the court must conduct a hearing after the verdict or finding of guilty.

A-1

(2) *Preliminary Order.*

(A) *Contents of a Specific Order.* If the court finds that property is subject to forfeiture, it must promptly enter a preliminary order of forfeiture setting forth the amount of any money judgment, directing the forfeiture of specific property, and directing the forfeiture of any substitute property if the government has met the statutory criteria. The court must enter the order without regard to any third party's interest in the property. Determining whether a third party has such an interest must be deferred until any third party files a claim in an ancillary proceeding under Rule 32.2(c).

(B) *Timing.* Unless doing so is impractical, the court must enter the preliminary order sufficiently in advance of sentencing to allow the parties to suggest revisions or modifications before the order becomes final as to the defendant under Rule 32.2(b)(4).

(C) *General Order.* If, before sentencing, the court cannot identify all the specific property subject to forfeiture or calculate the total amount of the money judgment, the court may enter a forfeiture order that:
    (i) lists any identified property;
    (ii) describes other property in general terms; and
    (iii) states that the order will be amended under Rule 32.2(e)(1) when additional specific property is identified or the amount of the money judgment has been calculated.

(3) *Seizing Property.* The entry of a preliminary order of forfeiture authorizes the Attorney General (or a designee) to seize the specific property subject to forfeiture; to conduct any discovery the court considers proper in identifying, locating, or disposing of the property; and to commence proceedings that comply with any statutes governing third-party rights. The court may include in the order of forfeiture conditions reasonably necessary to preserve the property's value pending any appeal.

A-2

(4) *Sentence and Judgment.*

    (A) *When Final.* At sentencing—or at any time before sentencing if the defendant consents—the preliminary forfeiture order becomes final as to the defendant. If the order directs the defendant to forfeit specific property, it remains preliminary as to third parties until the ancillary proceeding is concluded under Rule 32.2(c).

    (B) *Notice and Inclusion in the Judgment.* The court must include the forfeiture when orally announcing the sentence or must otherwise ensure that the defendant knows of the forfeiture at sentencing. The court must also include the forfeiture order, directly or by reference, in the judgment, but the court's failure to do so may be corrected at any time under Rule 36.

    (C) *Time to Appeal.* The time for the defendant or the government to file an appeal from the forfeiture order, or from the court's failure to enter an order, begins to run when judgment is entered. If the court later amends or declines to amend a forfeiture order to include additional property under Rule 32.2(e), the defendant or the government may file an appeal regarding that property under Federal Rule of Appellate Procedure 4 (b). The time for that appeal runs from the date when the order granting or denying the amendment becomes final.

(5) *Jury Determination.*

    (A) *Retaining the Jury.* In any case tried before a jury, if the indictment or information states that the government is seeking forfeiture, the court must determine before the jury begins deliberating whether either party requests that the jury be retained to determine the forfeitability of specific property if it returns a guilty verdict.

(B) *Special Verdict Form.* If a party timely requests to have the jury determine forfeiture, the government must submit a proposed Special Verdict Form listing each property subject to forfeiture and asking the jury to determine whether the government has established the requisite nexus between the property and the offense committed by the defendant.

(6) *Notice of the Forfeiture Order.*

(A) *Publishing and Sending Notice.* If the court orders the forfeiture of specific property, the government must publish notice of the order and send notice to any person who reasonably appears to be a potential claimant with standing to contest the forfeiture in the ancillary proceeding.

(B) *Content of the Notice.* The notice must describe the forfeited property, state the times under the applicable statute when a petition contesting the forfeiture must be filed, and state the name and contact information for the government attorney to be served with the petition.

(C) *Means of Publication; Exceptions to Publication Requirement.* Publication must take place as described in Supplemental Rule G(4)(a)(iii) of the Federal Rules of Civil Procedure, and may be by any means described in Supplemental Rule G(4)(a)(iv). Publication is unnecessary if any exception in Supplemental Rule G(4)(a)(i) applies.

(D) *Means of Sending the Notice.* The notice may be sent in accordance with Supplemental Rules G(4)(b)(iii)–(v) of the Federal Rules of Civil Procedure.

(7) *Interlocutory Sale.* At any time before entry of a final forfeiture order, the court, in accordance with Supplemental Rule G(7) of the Federal Rules of Civil Procedure, may order the interlocutory sale of property alleged to be forfeitable.

A-4

(c) Ancillary Proceeding; Entering a Final Order of Forfeiture.

(1) *In General.* If, as prescribed by statute, a third party files a petition asserting an interest in the property to be forfeited, the court must conduct an ancillary proceeding, but no ancillary proceeding is required to the extent that the forfeiture consists of a money judgment.

(A) In the ancillary proceeding, the court may, on motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason. For purposes of the motion, the facts set forth in the petition are assumed to be true.

(B) After disposing of any motion filed under Rule 32.2(c)(1)(A) and before conducting a hearing on the petition, the court may permit the parties to conduct discovery in accordance with the Federal Rules of Civil Procedure if the court determines that discovery is necessary or desirable to resolve factual issues. When discovery ends, a party may move for summary judgment under Federal Rule of Civil Procedure 56.

(2) *Entering a Final Order.* When the ancillary proceeding ends, the court must enter a final order of forfeiture by amending the preliminary order as necessary to account for any third-party rights. If no third party files a timely petition, the preliminary order becomes the final order of forfeiture if the court finds that the defendant (or any combination of defendants convicted in the case) had an interest in the property that is forfeitable under the applicable statute. The defendant may not object to the entry of the final order on the ground that the property belongs, in whole or in part, to a codefendant or third party; nor may a third party object to the final order on the ground that the third party had an interest in the property.

A-5

(3) *Multiple Petitions.* If multiple third-party petitions are filed in the same case, an order dismissing or granting one petition is not appealable until rulings are made on all the petitions, unless the court determines that there is no just reason for delay.

(4) *Ancillary Proceeding Not Part of Sentencing.* An ancillary proceeding is not part of sentencing.

(d) Stay Pending Appeal. If a defendant appeals from a conviction or an order of forfeiture, the court may stay the order of forfeiture on terms appropriate to ensure that the property remains available pending appellate review. A stay does not delay the ancillary proceeding or the determination of a third party's rights or interests. If the court rules in favor of any third party while an appeal is pending, the court may amend the order of forfeiture but must not transfer any property interest to a third party until the decision on appeal becomes final, unless the defendant consents in writing or on the record.

(e) Subsequently Located Property; Substitute Property.

(1) *In General.* On the government's motion, the court may at any time enter an order of forfeiture or amend an existing order of forfeiture to include property that:

(A) is subject to forfeiture under an existing order of forfeiture but was located and identified after that order was entered; or

(B) is substitute property that qualifies for forfeiture under an applicable statute.

(2) *Procedure.* If the government shows that the property is subject to forfeiture under Rule 32.2(e)(1), the court must:

(A) enter an order forfeiting that property, or amend an existing preliminary or final order to include it; and

(B) if a third party files a petition claiming an interest in the property, conduct an ancillary proceeding under Rule 32.2(c).

A-6

(3) *Jury Trial Limited.* There is no right to a jury trial under Rule 32.2(e).

**21 U.S.C. § 853**
**Criminal Forfeitures**

## (a) Property subject to criminal forfeiture

Any person convicted of a violation of this subchapter or subchapter II punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law—

**(1)** any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;

**(2)** any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation; and

**(3)** in the case of a person convicted of engaging in a continuing criminal enterprise in violation of section 848 of this title, the person shall forfeit, in addition to any property described in paragraph (1) or (2), any of his interest in, claims against, and property or contractual rights affording a source of control over, the continuing criminal enterprise.

The court, in imposing sentence on such person, shall order, in addition to any other sentence imposed pursuant to this subchapter or subchapter II, that the person forfeit to the United States all property described in this subsection. In lieu of a fine otherwise authorized by this part, a defendant who derives profits or other proceeds from an offense may be fined not more than twice the gross profits or other proceeds.

## (b) Meaning of term "property"

Property subject to criminal forfeiture under this section includes—

**(1)** real property, including things growing on, affixed to, and found in land; and

**(2)** tangible and intangible personal property, including rights, privileges, interests, claims, and securities.

A-8

**(c) Third party transfers**
All right, title, and interest in property described in subsection (a) vests in the United States upon the commission of the act giving rise to forfeiture under this section. Any such property that is subsequently transferred to a person other than the defendant may be the subject of a special verdict of forfeiture and thereafter shall be ordered forfeited to the United States, unless the transferee establishes in a hearing pursuant to subsection (n) that he is a bona fide purchaser for value of such property who at the time of purchase was reasonably without cause to believe that the property was subject to forfeiture under this section.

**(d) Rebuttable presumption**
There is a rebuttable presumption at trial that any property of a person convicted of a felony under this subchapter or subchapter II is subject to forfeiture under this section if the United States establishes by a preponderance of the evidence that—

**(1)** such property was acquired by such person during the period of the violation of this subchapter or subchapter II or within a reasonable time after such period; and

**(2)** there was no likely source for such property other than the violation of this subchapter or subchapter II.

**(e) Protective orders**

**(1)** Upon application of the United States, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property described in subsection (a) for forfeiture under this section—

**(A)** upon the filing of an indictment or information charging a violation of this subchapter or subchapter II for which criminal forfeiture may be ordered under this section and alleging that the

A-9

property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section; or

**(B)** prior to the filing of such an indictment or information, if, after notice to persons appearing to have an interest in the property and opportunity for a hearing, the court determines that—

**(i)** there is a substantial probability that the United States will prevail on the issue of forfeiture and that failure to enter the order will result in the property being destroyed, removed from the jurisdiction of the court, or otherwise made unavailable for forfeiture; and

**(ii)** the need to preserve the availability of the property through the entry of the requested order outweighs the hardship on any party against whom the order is to be entered: *Provided, however*, That an order entered pursuant to subparagraph (B) shall be effective for not more than ninety days, unless extended by the court for good cause shown or unless an indictment or information described in subparagraph (A) has been filed.

**(2)** A temporary restraining order under this subsection may be entered upon application of the United States without notice or opportunity for a hearing when an information or indictment has not yet been filed with respect to the property, if the United States demonstrates that there is probable cause to believe that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section and that provision of notice will jeopardize the availability of the property for forfeiture. Such a temporary order shall expire not more than fourteen days after the date on which it is entered, unless extended for good cause shown or unless the party against whom it is entered consents to an extension for a longer period. A hearing requested concerning an order entered under this paragraph shall be held at the earliest possible time and prior to the expiration of the temporary order.

A-10

**(3)** The court may receive and consider, at a hearing held pursuant to this subsection, evidence and information that would be inadmissible under the Federal Rules of Evidence.

**(4) Order to repatriate and deposit.—**

> **(A)** In general.—
> Pursuant to its authority to enter a pretrial restraining order under this section, the court may order a defendant to repatriate any property that may be seized and forfeited, and to deposit that property pending trial in the registry of the court, or with the United States Marshals Service or the Secretary of the Treasury, in an interest-bearing account, if appropriate.

> **(B)** Failure to comply.—
> Failure to comply with an order under this subsection, or an order to repatriate property under subsection (p), shall be punishable as a civil or criminal contempt of court, and may also result in an enhancement of the sentence of the defendant under the obstruction of justice provision of the Federal Sentencing Guidelines.

**(f) Warrant of seizure**
The Government may request the issuance of a warrant authorizing the seizure of property subject to forfeiture under this section in the same manner as provided for a search warrant. If the court determines that there is probable cause to believe that the property to be seized would, in the event of conviction, be subject to forfeiture and that an order under subsection (e) may not be sufficient to assure the availability of the property for forfeiture, the court shall issue a warrant authorizing the seizure of such property.

**(g) Execution**
Upon entry of an order of forfeiture under this section, the court shall authorize the Attorney General to seize all property ordered forfeited upon such terms and conditions as the court shall deem proper. Following entry of an order declaring the property forfeited, the court may, upon application of the United States, enter such appropriate

restraining orders or injunctions, require the execution of satisfactory performance bonds, appoint receivers, conservators, appraisers, accountants, or trustees, or take any other action to protect the interest of the United States in the property ordered forfeited. Any income accruing to or derived from property ordered forfeited under this section may be used to offset ordinary and necessary expenses to the property which are required by law, or which are necessary to protect the interests of the United States or third parties.

**(h) Disposition of property**
Following the seizure of property ordered forfeited under this section, the Attorney General shall direct the disposition of the property by sale or any other commercially feasible means, making due provision for the rights of any innocent persons. Any property right or interest not exercisable by, or transferable for value to, the United States shall expire and shall not revert to the defendant, nor shall the defendant or any person acting in concert with him or on his behalf be eligible to purchase forfeited property at any sale held by the United States. Upon application of a person, other than the defendant or a person acting in concert with him or on his behalf, the court may restrain or stay the sale or disposition of the property pending the conclusion of any appeal of the criminal case giving rise to the forfeiture, if the applicant demonstrates that proceeding with the sale or disposition of the property will result in irreparable injury, harm, or loss to him.

**(i) Authority of the Attorney General** With respect to property ordered forfeited under this section, the Attorney General is authorized to—

**(1)** grant petitions for mitigation or remission of forfeiture, restore forfeited property to victims of a violation of this subchapter, or take any other action to protect the rights of innocent persons which is in the interest of justice and which is not inconsistent with the provisions of this section;

**(2)** compromise claims arising under this section;

A-12

**(3)** award compensation to persons providing information resulting in a forfeiture under this section;

**(4)** direct the disposition by the United States, in accordance with the provisions of section 881(e) of this title, of all property ordered forfeited under this section by public sale or any other commercially feasible means, making due provision for the rights of innocent persons; and

**(5)** take appropriate measures necessary to safeguard and maintain property ordered forfeited under this section pending its disposition.

## (j) Applicability of civil forfeiture provisions

Except to the extent that they are inconsistent with the provisions of this section, the provisions of section 881(d) of this title shall apply to a criminal forfeiture under this section.

**(k) Bar on intervention**Except as provided in subsection (n), no party claiming an interest in property subject to forfeiture under this section may—

**(1)** intervene in a trial or appeal of a criminal case involving the forfeiture of such property under this section; or

**(2)** commence an action at law or equity against the United States concerning the validity of his alleged interest in the property subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture under this section.

## (l) Jurisdiction to enter orders

The district courts of the United States shall have jurisdiction to enter orders as provided in this section without regard to the location of any property which may be subject to forfeiture under this section or which has been ordered forfeited under this section.

## (m) Depositions

In order to facilitate the identification and location of property declared forfeited and to facilitate the disposition of petitions for remission or

A-13

mitigation of forfeiture, after the entry of an order declaring property forfeited to the United States, the court may, upon application of the United States, order that the testimony of any witness relating to the property forfeited be taken by deposition and that any designated book, paper, document, record, recording, or other material not privileged be produced at the same time and place, in the same manner as provided for the taking of depositions under Rule 15 of the Federal Rules of Criminal Procedure.

**(n) Third party interests**

**(1)** Following the entry of an order of forfeiture under this section, the United States shall publish notice of the order and of its intent to dispose of the property in such manner as the Attorney General may direct. The Government may also, to the extent practicable, provide direct written notice to any person known to have alleged an interest in the property that is the subject of the order of forfeiture as a substitute for published notice as to those persons so notified.

**(2)** Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of notice under paragraph (1), whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property. The hearing shall be held before the court alone, without a jury.

**(3)** The petition shall be signed by the petitioner under penalty of perjury and shall set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought.

**(4)** The hearing on the petition shall, to the extent practicable and consistent with the interests of justice, be held within thirty days of the filing of the petition. The court may consolidate the hearing on

A-14

the petition with a hearing on any other petition filed by a person other than the defendant under this subsection.

**(5)** At the hearing, the petitioner may testify and present evidence and witnesses on his own behalf, and cross-examine witnesses who appear at the hearing. The United States may present evidence and witnesses in rebuttal and in defense of its claim to the property and cross-examine witnesses who appear at the hearing. In addition to testimony and evidence presented at the hearing, the court shall consider the relevant portions of the record of the criminal case which resulted in the order of forfeiture.

**(6)** If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that—

**(A)** the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

**(B)** the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;

the court shall amend the order of forfeiture in accordance with its determination.

**(7)** Following the court's disposition of all petitions filed under this subsection, or if no such petitions are filed following the expiration of the period provided in paragraph (2) for the filing of such petitions, the United States shall have clear title to property that is the subject of the order of forfeiture and may warrant good title to any subsequent purchaser or transferee.

A-15

**(o) Construction**
The provisions of this section shall be liberally construed to effectuate its remedial purposes.

**(p) Forfeiture of substitute property**

**(1) In general**
Paragraph (2) of this subsection shall apply, if any property described in subsection (a), as a result of any act or omission of the defendant—

**(A)** cannot be located upon the exercise of due diligence;

**(B)** has been transferred or sold to, or deposited with, a third party;

**(C)** has been placed beyond the jurisdiction of the court;

**(D)** has been substantially diminished in value; or

**(E)** has been commingled with other property which cannot be divided without difficulty.

**(2) Substitute property**
In any case described in any of subparagraphs (A) through (E) of paragraph (1), the court shall order the forfeiture of any other property of the defendant, up to the value of any property described in subparagraphs (A) through (E) of paragraph (1), as applicable.

**(3) Return of property to jurisdiction**
In the case of property described in paragraph (1)(C), the court may, in addition to any other action authorized by this subsection, order the defendant to return the property to the jurisdiction of the court so that the property may be seized and forfeited.

**(q) Restitution for cleanup of clandestine laboratory sites**
The court, when sentencing a defendant convicted of an offense under this subchapter or subchapter II involving the manufacture, the

A-16

possession, or the possession with intent to distribute, of amphetamine or methamphetamine, shall—

**(1)** order restitution as provided in sections 3612 and 3664 of title 18;

**(2)** order the defendant to reimburse the United States, the State or local government concerned, or both the United States and the State or local government concerned for the costs incurred by the United States or the State or local government concerned, as the case may be, for the cleanup associated with the manufacture of amphetamine or methamphetamine by the defendant, or on premises or in property that the defendant owns, resides, or does business in; and

**(3)** order restitution to any person injured as a result of the offense as provided in section 3663A of title 18.

A-17